## DENNISON *v.* GOEHRING.

Account render lies by *cestui que trust* against his trustee receiving profits of land.

When the title has passed to a person in trust, the trust will always be enforced, though the trustee himself paid the purchase-money, and the trust is declared for his children.

IN error from the District Court of Allegheny.

This was an action of account render by Goehring and wife against Dennison, as their bailiff, who held under a deed from Sturgeon et al. By this deed, lands were conveyed to Dennison in fee, reserving a ground-rent in fee, upon the special trust that he and his heirs would let the premises at his discretion, and receive and apply the rents, share and share alike, to the maintenance and education of J. S. Dennison, M. A. Dennison, and Agnes Dennison, (the wife of the plaintiff;) and if either of them should die without leaving lawful issue, the whole of the proceeds of the rents should be applied to the use of the survivors: if with issue, such issue to enjoy their parents' share. And upon the further trust, that after the deaths of the said J., M., and A., the said Samuel, his heirs, &c., should hold the premises in trust for the legal heirs and representatives of the said J., M., and A., their heirs and assigns. There were further limitations to the heirs of the survivors, in the event of the death of either of the tenants for life

without issue, and a provision discharging the estate from debts and contracts by J., M., and A., or either of them, or their issue during their lives.

Upon this evidence the points taken were, that there were not proper parties, and that the trust was the subject of the new chancery jurisdiction, and not enforceable at law; which were overruled.

These were all the facts upon this record; but various others were alluded to, and formed the basis of part of the agreement. These are to be found in the case in the note, and appear to have been treated as in evidence in this cause.

*Dunlop* and *Alden*, for plaintiff in error, argued that the only construction the deed would bear, was a covenant to give money at a future day. The beneficiaries were minors, and the defendant paid the consideration money for the land, and had eight children not provided for. There was here no express declaration of a use, as argued by Mr. J. Kennedy, since it was essential to such a case that there should be something *in esse*, of which the use should be declared: 1 Cruise Dig. 433, s. 39. No estate was to vest in the beneficiaries; but the rents were to be reserved *in futuro* to the defendant: Cruise Tit. 32, c. 12, ss. 7, 9 : and there was but a naked promise to apply the proceeds to maintenance. Neither could this be an advancement, since the legal estate was retained by the father. If it is an executory trust, it is without consideration, and no case can be found of such a trust being enforced, while they are numerous which deny the proposition : Colman *v.* Sarel, 3 Bro. C. C. 12 ; Ellison *v.* Ellison, 6 Ves. 656 ; Antrobus *v.* Smith, 12 Ves. 39 ; Jefferys *v.* Jefferys, 1 Cra. & Phil. 138. A valuable consideration is always essential to put the court in motion ; blood, however near, is not sufficient : Holloway *v.* Headington, 8 Sim. 324 ; Jefferys *v.* Jefferys.

Nor is it pretended that the benefit of the *cestuis que trust* entered into the consideration for the creation of this estate; for it is admitted Dennison paid the full pecuniary value for the land. This is then within the express words used in Kisler *v.* Kisler, 2 Watts, 324 ; Meck *v.* Kettlewell, 1 Hare, 464. The rent is a mere chose in action, and the gift, until completed by possession, is revocable : Lyon *v.* Marclay, 1 Watts, 271 ; Fink *v.* Cox, 18 Johns. 145 ; 2 Johns. 52 ; 10 Johns. 293 ; 2 Bailey, 588.

If there be a remedy, it is covenant by the grantor, who is the only party that can sustain the action: nor can the moral obliga-

tion to maintain children be invoked, for that equally extends to the after-born children.

*Todd, Woods,* and *Loomis,* contrà.

GIBSON, C. J.—The point involved in this cause was argued on a bill in equity between the parties, at September Term, 1845; and as the case has not been reported, the opinion of the court, delivered by my brother KENNEDY, is here subjoined. The same point has been twice solemnly argued at the present term: once on a bill of review, without being decided, because the bill was not held to lie, (Vol. VI.); and once on this writ of error; but without the effect of leading us to any other opinion than that which was expressed in the case of the original bill.

The argument for the plaintiff in error resolves itself into this: that the trust declared on the deed to him is an executory one, which equity will not enforce in favour of volunteers, as his children are said to be. But what is an executory trust? In Bagshaw *v.* Spencer, 1 Ves. 152, Lord Hardwicke declared, almost in terms, every trust to be executory; inasmuch as every *cestui que trust* is under the necessity of coming into equity for a subpœna to have the trust executed; from which he inferred that the distinction is unfounded—a position from which he was forced to recede in Exel *v.* Wallace, 2 Ves. 323; and Lord Henley said, in Bastard *v.* Proby, 2 Cox, 8, that he had given it up altogether. It is obvious, that if all trusts were executory in Lord Hardwicke's sense of the word, the plaintiff in error would have no case here; for the books are full of decrees in favour of children and volunteers. But there never was a time when there was not a substantial distinction between an executory and an executed trust, properly so called. It was recognised by Lord Cowper, in Bale *v.* Coleman, 8 Vin. 267; by Lord King, in Papillon *v.* Voice, 2 P. W. 478; by Lord Talbot, in Glenorchy *v.* Bosville, Ca. Temp. Talb. 3; by Lord Hardwicke himself in Roberts *v.* Dixwell, 1 Atk. 608; Baskerville *v.* Baskerville, 2 Atk. 280; Read *v.* Snell, Ibid. 648; Woodhouse *v.* Hoskins, 3 Atk. 244; and Marryat *v.* Townly, 1 Ves. 102; and by Lord Northington, in Austen *v.* Taylor, 1 Eden's R. 368. There is therefore an actual distinction; but what is it? "A trust executed," says Mr. Lewin, in an excellent treatise on Trusts and Trustees, chap. 5, p. 48, "are when the limitations of the equitable interest are complete and final; in the executory trust, the limitations of the equitable interest are not intended to be complete and final, but merely to serve as minutes and instructions for perfecting the set-

tlement at some future period." They arise out of marriage arti-
cles or wills, as descriptions of the estates to be created when a
court of equity comes to settle them and model the trusts conform-
ably to the intention of the party who dictated them. To say
nothing of the fact that the trusts, in this instance, do not arise out
of marriage articles or a will, I ask whether the limitations of the
equitable interests are not complete and final, as they stand on the
face of the deed, or whether they require the power of a chancellor
to direct a conveyance in order to settle them ?   The trusts are :
first, to lease the property and apply the rents of it to the mainte-
nance and education of the trustee's three children, Jeremiah, Mary
Anne, and Agnes, and their children, or the survivors of those who
should die childless : second, to hold the property after the death
of all, or any of them, in trust for their issue, the survivors, or their
right heirs in fee.   Nothing can be clearer than the details ; and
never were equitable interests more perfectly and definitely limited.
There would be no room for a chancellor to model the trusts, even
if that were within his jurisdiction ; but as they arise on an exe-
cuted conveyance, which vests the legal estate in a trustee, his
jurisdiction extends only to the enforcement of them.   The plain-
tiff in error therefore fails on his own ground.

But is it true that equity will not enforce an executory trust in
favour of a volunteer ?   It will doubtless not enforce a contract *to
create* a trust, though it were under hand and seal ; and in this
respect it carries the doctrine of *nudum pactum* further than even
the law does ; but the difference between a covenant to create a
trust and a trust created, is as wide as the difference between a
covenant to convey and a conveyance executed.   It enforces no
contract which does not rest on a valuable, or at least a meritorious
consideration ; but it enforces an executed contract with as much
alacrity as the law would enforce it.   The reason of the difference
in regard to the effect of a seal is, that the interposition of a chan-
cellor is matter of favour ; but that the interposition of a court of
law, with whom a seal stands for a consideration, is matter of
right.   While a contract for a trust, therefore, is executory, the
trust itself is held to be executory ; and it stands on the footing of
any other executory contract, in respect to which a chancellor is
guided by his apprehension of the justice of the contract in apply-
ing or refusing his power to the execution of it ; but when the legal
estate has passed by a conveyance in which a trust is distinctly
declared, the trustee will not be allowed to set up want of consider-
ation to defeat it.   The plaintiff in error is a party to the instru-

ment, and as much bound by it as if the consideration had moved from the children. His payment of the purchase-money was a gift to them of so much as an advancement, which took effect in possession by being laid out to their use in the purchase; and he cannot now retract it. He can no more claim the beneficial estate purchased with it, than he could have claimed a resulting trust, had the legal estate been conveyed to them. In Ellison v. Ellison, 6 Ves. 656, Lord Eldon said, that the assistance of the court cannot be had to constitute a party *cestui que trust*, upon a voluntary covenant; but that, if the relation of *cestui que trust* and trustee be actually constituted by a legal conveyance, though without a consideration, the equitable interest will be enforced. To the same effect is Bunn v. Winthrop, 1 Johns. Ch. R. 337; and the remark of Sir Joseph Jekyll, in Lechmere v. The Earl of Carlisle, 3 P. W. 222, that every volunteer *cestui que trust* is entitled to the assistance of a court of equity, is full to the point. In Sloan v. Cadogan, Sugd. Vend. App. No. 24, Sir William Grant remarked: "That the court will not interfere to give perfection to the instrument; but that where the trust is actually created, no consideration for it is essential; and that the court will execute it, though it be voluntary." The same thing was said by him in Antrobus v. Smith, 12 Ves. 39, in which a voluntary assignment to a daughter was not held to create a trust only because it did not pass the legal title. Ex parte Pye, 18 Ves. 140, also contains the same principle. In all these, and some other cases that might be cited, the question was not whether the trust were voluntary, but whether there were any trust at all. It was, whether there was a gift executed by a transfer of the title at law, or only an agreement to give. In the case before us, the legal title undoubtedly passed to the plaintiff in error, as a trustee, with his assent expressed by becoming a party to the indenture, and by paying the purchase-money; which made it a gift by him to the children, perfected by delivery to their use.

But even if we were to take the deed to be, not a conveyance of the legal estate in trust, but an executory agreement to create a trust, it is far from clear that the result would be different. Natural affection, though not a valuable, is a meritorious consideration; on the foot of which, an agreement by a father to secure a provision for his child has been enforced in equity, by reason of the obligation of parents to provide for their offspring. Thus, a covenant with a son to renew a lease, was enforced in Husband v. Pollard, cited 2 P. W. 467; and in Goring v. Nash, 3 Atk. 186, a father's covenant to settle an estate on his son was specifically de-

creed.   In such a case, a legitimate child is not held to be a volunteer, though it was held in Fursaker *v*. Robinson, Prec. in Chan. 475, that a bastard is so.   In corroboration of the principle may be mentioned those cases in which equity has supplied the surrender of a copyhold, and a defective execution of a *power in favour* of a legitimate child.

As the purposes of these trusts required the legal estate to be vested in the plaintiff in error, it was not executed in the children by the statute; and all illustrations from the nature of a use are consequently beside the question, which stands before us as it would have stood had the statute of uses never been enacted.   If the estate were executed, the plaintiff in error would not have the shadow of a case; for it is an elementary principle, that a purchase by a father in the name of his child, is *primâ facie* an advancement, though the legal presumption that it is so may be rebutted by circumstances—such, however, as are not to be found in the case before us.   In every aspect, then, the case was with the plaintiff below; and though we regret that the defendant settled the estate on a mistaken belief that he would have no more children by the same venter, yet, as he has done so, he is bound by it.

Judgment affirmed.(*a*)

---

(*a*) DENNISON *v*. GOEHRING.

A father purchased land with his own money, and took a conveyance to himself, in trust, to demise the premises and apply the rents to the maintenance and use of A., B., and C., his children.   Equity will enforce the trust and compel an account.

APPEAL from the District Court of Allegheny, in equity.

This was a bill by Goehring and wife against Dennison, setting forth the will of Jeremiah Sturgeon, by which he devised his estate to his wife for life, remainder to his children, of whom the wife of Dennison was one.   That the deed, (mentioned in the case of Dennison *v*. Goehring, *ut sup*.) was executed by the widow and children of Sturgeon, and by Dennison and his wife, in consideration of $2000 and the rents reserved, by which certain real estate was conveyed to Dennison upon the trusts therein mentioned.   That Dennison had managed the estate and received the rents, and complainant's wife was one of the children, *cestuis que trust*, in the deed mentioned.   An account and the general prayer for relief was added.   A demurrer being overruled, and the bill taken *pro confesso*, an account was decreed.   Subsequently the defendant was permitted to file an answer without prejudice to the decretal order.   The matters admitted before the master, which were relied on, were that the *cestuis que trust* had no property of their own, and that since the execution of the deed Dennison had eight children born, who were all living.   There was an averment of mistake in the deed, but of this there was no proof.   A final decree on the master's report having been made, the exceptions on appeal were, that the case showed no equity; that it was not shown respondent was trustee for complainants; that the trust was one equity would not enforce.

KENNEDY, J.—If the phraseology and tenor of the tripartite deed, in which Samuel Dennison, the appellant, is made the grantee and releasee, be attended to, it is very clear

that no portion of the property thereby granted or released to him and his heirs, was intended by the parties to be granted or released to him or them for his and their benefit. On the contrary, it is expressly given to him in fee, *in trust for the use of Jeremiah Sturgeon Dennison, Mary Ann Dennison, and Agnes Dennison,* (children of the said Samuel Dennison at the time,) *their heirs and assigns for ever,* in the manner therein particularly mentioned and appointed; as that the said Samuel Dennison, his heirs and assigns, should from time to time demise and lease the property for such term or terms, to such person or persons, and for such rent or rents, as to him or them might seem expedient, and apply the proceeds thereof equally, share and share alike, to the maintenance and education of the said Jeremiah Sturgeon Dennison, Mary Ann Dennison, and Agnes Dennison, children of the said Samuel Dennison: Providing, that if either of the said Jeremiah, Mary Ann, and Agnes, or any of them, should die without leaving lawful issue, the whole of the said rents should be applied to the use of the survivors or survivor; but if either or any of them should die leaving lawful issue, then such issue to enjoy such share of said rents as would have been enjoyed by the parent or parents of such issue. And thus throughout the whole deed, the sole and exclusive use and benefit of the property granted, released, or intended to be so, is expressly declared to be for the said Jeremiah, Mary Ann, and Agnes, their heirs and assigns for ever, except in the case of either or any of them dying without leaving lawful issue, when the use of the whole of the rents of the property is given to the survivors or survivor, their heirs and assigns for ever. In no instance, however, throughout the whole deed, is the property, or any portion of it, given to Samuel Dennison, the appellant, for his *own use or that of his heirs,* but granted or released to him, "to have and to hold the same to the said Samuel Dennison, his heirs and assigns, *in trust,*" &c., thus excluding him and his heirs from all use and benefit in the property granted—*expressio unius est exclusio alterius.* By the terms of the deed, and from the circumstances of Jeremiah, Mary Ann, and Agnes being minors, the appellant would appear to have been entitled not only to receive the rents, issues, and profits of the estate, but to retain in his hands any surplus which might remain of the share of any one of them, after paying the expenses of his or her maintenance and education until he or she should attain full age, when he would be bound to pay it over, with such interest as might with ordinary care have been made thereon, after deducting all reasonable expenses attending the execution of the trust. And further, after their attaining full age, he would be bound to pay over all rents, issues, and profits subsequently received, as soon as received, after deducting therefrom compensation for the trouble and expenses of collection. And upon the deaths of the said Jeremiah, Mary Ann, and Agnes, the said appellant is expressly declared to hold the premises in trust for the use of the right heirs and legal representatives of the said Jeremiah, Mary Ann, and Agnes, their heirs and assigns for ever: provided none of them should die leaving lawful issue, but if they did, then in trust for the use of the survivors or survivor of them, their heirs or assigns for ever. Now there is certainly nothing expressed on the face of the deed, which would seem to have been intended by the parties to countervail any of the provisions or uses which have just been cited. From the authorities on the subject, it is clear that the uses for which a conveyance of real estate is made, when clearly expressed in the deed of conveyance, must prevail; but when no consideration is expressed nor use declared, it may enure to the benefit of the grantor or former owner of the estate. See Co. Lit. 271; 1 Cruise Dig. Tit. XI. ch. 4, sec. 19. The mere want of a valuable consideration will not of itself, without any auxiliary circumstances, as Chancellor Kent says, 4 Comm. 306, create a resulting trust, and convert a grantee into a trustee; for this, as Mr. Sanders has truly observed, would destroy the effect of every voluntary conveyance. There must be the absence of both a consideration and a declaration of the use. Thus, where the use is expressly limited away during the life of the grantor, no use can result to him, whether he has received a consideration or not: Cr. Dig. Tit. XI., ch. 4, sec. 30, 31. If this doctrine be correct, the only ground upon which the counsel of the appellant would seem to have relied, as a support of his claim, must be considered as removed or gone. His notion appears to be, that because the moneyed consideration mentioned in the deed of conveyance came from the grantee, the estate thereby conveyed ought to be regarded as enuring to his benefit, notwithstanding an express declaration of a use to the contrary; and that his children shall derive no advantage therefrom, though the purchase appears to have been made for their exclusive benefit

Q

This would be in direct opposition to every principle that has been mentioned on the subject, both in law and equity, and indeed contrary to every day's practice, whereby parents make provision for their children, by purchasing estates in their own names for the use of their children.   So parents are allowed by law to convey property which they already own, to their children, without any consideration except that of natural affection.   Accordingly, where a mother transferred a large portion of her property to her children by her deceased husband, it was held good against a subsequent husband, who married without any knowledge of the fact: Cotton *v.* King, 2 Pr. Wm. 358; Hunt *v.* Matthews, 1 Vern. 408.   So a husband or a father may convey real estate already acquired, in trust for his wife or child, without any consideration more than the relationship that exists between them; and it will be good not only against himself but his subsequent creditors, when done without any intent to deceive them: Townshend *v.* Windham, 2 Ves. sen. 11; 1 Roper on Husband and Wife, 37.   If a father, then, may convey property already acquired to his children, or any of them, without consideration, why may he not purchase in trust for their use and benefit?   The principle is the same, and must go to sustain the one as well as the other.   The relationship between father and child is a sufficient consideration in law, if any were wanting, to support a purchase of real estate by the father in the name of the child, so that the use shall enure to the benefit of the latter, and no trust result to the father, as would be the case were he to purchase the estate in the name of a stranger: Grey *v.* Grey, 1 Chan. Ca. 296; Ca. T. Finch, 341.   And in Back *v.* Andrews, Prec. in Ch., 1, where J. S. purchased a copyhold estate to himself, his wife, and his daughters, and their heirs, and afterwards surrendered it to the plaintiff and his heirs, for securing a sum of money he owed him, and died, it was held that J. S. was not entitled to any part of the lands, it being an advancement for his wife and daughter, and the husband and wife taking only a moiety thereof by entireties, which became the property of the wife as the survivor of her husband; though it was insisted strongly for the plaintiff, that he ought to have the whole, for the whole of the purchase-money was the money of J. S., and that his wife and daughter were but trustees for him. To have adopted such an argument would, however, have been creating a trust different from that expressly declared in the deed, which seems to be what is sought for in the case before us.   The idea, therefore, that the trusts declared in this case cannot be enforced because the purchase was made with the money of the father, and not with that of the children who are named in the deed as the *cestuis que trust*, has neither reason nor authority to support it.   In Lechmere *v.* Carlisle, 3 Pr. Wms. 222, this point is particularly noticed by Sir Joseph Jekyl, who states in the most clear and explicit terms, that every *cestui que trust*, whether a volunteer or not, is entitled to the benefit of the trust; and that there is no reason why the trustee should keep the estate.   To permit the appellant to do so in this case, would be to sanction a most flagrant violation of his own agreement, by which he is most clearly bound both in law and equity.   In short, I am at a loss to discover even a plausible pretext, on any ground, for his refusing to execute the trust.   The decree of the court below is therefore affirmed, and the appellant directed and ordered to pay the costs of the appeal.