## APPEAL OF JOHN S. FERGUSON AND WIFE.

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY, IN EQUITY.

Argued February 21, 1887—Decided January 3, 1888.

1. In actions respecting real property, if there be no equitable ground of relief involved, the rights of the parties must be determined at law. When thus determined, or when in proceedings by bill in equity the rights of the plaintiff are admitted in the pleadings, or are undisputed, or otherwise clearly appear, an equity based upon those rights may be asserted and a decree for equitable relief be made.

Statement of Facts.

2. Where, upon the sale of a lot, the deed makes reference to a plan upon which the lot is laid down and calls for a certain street or alley thereon, this constitutes a dedication of the street or alley to the use of the purchaser as a public way though not yet opened, and the map or plan referred to becomes a material and essential part of the conveyance and is to have the same effect as though incorporated into it.

3. Where a daughter has received from her father such a conveyance with such a reference, though for a nominal consideration, and has erected a dwelling thereon, she is not to be treated as a volunteer, and her rights to the street referred to may be enforced by a decree in equity: Washburn's App., 105 Pa. 480, distinguished.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.; GREEN, J., absent.

No. 32 July Term 1886, Sup. Ct.; court below, No. 5 April Term 1883, C. P., in equity.

This was a proceeding by a bill in equity filed on March 20, 1883, by F. W. Mason and Sarah E. Mason, his wife, in right of said wife, against John Ferguson and Frances E. Ferguson, his wife.

The bill averred that on July 1, 1869, Joseph T. Fellows became seized in fee of a parcel of land in the Fifth ward of the city of Scranton, containing eight acres more or less; that he caused said land to be laid out and plotted into building lots and into streets and alleys, and that among the streets laid out was one fifty feet wide, designated as Rock street: That on November 30, 1871, he conveyed lot marked No. 2 on said plan by general warranty deed to Mrs. Sarah E. Mason, the plaintiff, in said deed describing said lot as "beginning at a corner on the west side of Main street at the intersection of Rock street, thence along said Rock street north," etc.; that on the same day he conveyed lot No. 4 fronting on Main street to Mrs. Mary H. Mott, and lots Nos. 4 and 5 fronting on Sixth avenue to Mrs. Kate Gibbs, and, on November 30, 1872, lot No. 3, fronting on Main street, to Mrs. Jane Wells: That on the said plan there was plotted and laid out for public use an alley twenty-five feet wide, running in the rear of said lots across Rock street and parallel with Main street: That about March 15, 1878, said J. T. Fellows conveyed lot No. 1 on said plan to Frances E. Fellows, then his wife, now Frances E. Ferguson, wife of John E. Ferguson, without mentioning or bounding

the same on Rock street, or designating courses and distances; that said Frances E. Ferguson, defendant, claims to own all the land embraced in Rock street from Main street to said alley, and is about to appropriate it to her own use in the erection of a dwelling thereon which would close up Rock street: That plaintiff, Sarah E. Mason, has built a dwelling on her said lot No. 2 at great cost, with the view of the use of Rock street therewith, and that the closing of said street by the building of a dwelling thereon by the defendant, would be a great damage and an irreparable injury to the plaintiff. The prayer was for a preliminary and perpetual injunction, and for general relief.

The answer averred that said J. T. Fellows was not seized in fee of the said parcel of eight acres, but the title thereto was in John Heermans, succeeded by W. W. Jessup, in trust for said J. T. Fellows; that the defendants had no knowledge but were informed and believed that said J. T. Fellows did not lay out and plot in building lots the said parcel, nor did he lay out and plot a street to be known as Rock street, and that such a street was never appropriated, opened, accepted or used as a street by any one; that defendant, Frances E. Fergurson, owns the land in dispute called Rock street, and had purchased it of J. T. Fellows for a valuable consideration without notice or knowledge of any kind that there was any dedication of it for the purpose of a street or that any such claim had been made by the plaintiffs or any other person; that said Sarah E. Mason had not built the dwelling as claimed by her, but it was built by said J. T. Fellows and paid for by him; that a court of equity had no jurisdiction of the matter set forth in the bill, and prayed to be dismissed.

Issue being joined, on November 7, 1883, *Mr. Geo. S. Horn* was appointed master and examiner, in the hearing before whom the following material facts appeared:

In October or November, 1871, Joseph Turvey Fellows, being the owner of about eight acres of land in a populous part of the city of Scranton, laid the same out into some twenty-six or twenty-seven city lots according to a map or plan which he caused to be made of them. The land thus divided up was bounded easterly in one part by Main street, westerly by Hyde

### The Master's Report.

Park avenue, northerly by the Hampton road, otherwise called Sixth avenue, and Southerly by Fellows avenue. Upon this plot a street designated as Rock street was laid out fifty feet wide extending from Main street to Hyde Park avenue, with an alley intersecting this, running through from the Hampton road to Fellows avenue, and another alley running from the first alley northwesterly to Hyde Park avenue.

This plot was somewhat as follows:

HAMPTON ROAD, OR SIXTH AVENUE.

FELLOWS AVENUE.

On November 30, 1871, Mr. Fellows, who was then a widower, executed and delivered to his daughter, Mrs. Sarah E. Mason, for the consideration of one dollar, actually paid, a deed in fee for one of the lots upon this plot, bounded and described in said deed as follows: "Beginning at the corner on the west side of main street at the intersection of Rock street, thence along said Rock street north . . . . . to an alley, thence along said alley south . . . . . to a corner of lot number three, thence along line of said lot south . . . . . to said

Main street, thence along said street north . . . . . to place of beginning, it being lot No. 2, on map of lots laid out by the said Joseph T. Fellows in said city [Scranton] and part of same as conveyed by Joseph Fellows to said Joseph T. Fellows by deed," etc.

This conveyance was intended as a gift to Mrs. Mason according to a selection made by her from this plot of lots, and corresponding deeds of gift were at the same time executed and delivered to the three other daughters of the grantor, for lots selected by them also upon this plot. The deed of Mrs. Mason was duly recorded December 2, 1871. Subsequently Mrs. Mason went into possession of her lot, and some time in 1872 and 3, a house was built for her thereon in part by her father, Mr. Fellows, but mainly by her husband, F. W. Mason.

Rock street was never opened. As projected, it extended between Mrs. Mason's lot on the one side and Mr. Fellows' homestead on the other. The fence line between the two properties ran along the middle of the street, Mrs. Mason taking into her inclosure some 32 feet of the street in front and 18 to 20 feet in the rear. Her rear fence also extended across and fenced in part of the projected 20 feet alley, which ran from the Hampton road to Fellows avenue. While thus fenced in, the land covered by Rock street was used by the parties on either side as a yard and garden. Mrs. Mason had a coal shed upon it to which she obtained access through a gate and way across Mr. Fellows' land, and then through bars in the division fence, or along Mr. Fellows' side of the fence. On the other side, within the lines of the street, was a well from which water was drawn for use at Mr. Fellows' barn. There was also a pig-sty on it, and it was largely used as a barn-yard. At one time Mr. Fellows cultivated as a garden some portion of the street on Mrs. Mason's side.

This use and occupation of the land covered by the street, on either side, continued up to the time of Mr. Fellows' death in July, 1878.

Some time about 1873, Mr. Fellows had married the defendant who is now Mrs. Frances E. Ferguson, and on March 13, 1878, he conveyed to her for life for the consideration of $2,000, remainder to his son Edward A. Fellows in fee, the following described premises: "Beginning at a post and stones at the

westerly angle of the intersection of Main street south . . . .
to line of lot of Elizabeth Mason, thence along the line of said
Mason lot . . . . . to an alley, thence along said alley north
. . . . . to Sixth avenue, thence along Sixth avenue south
. . . . . to the place of beginning." The land thus described
includes that portion of Rock street which adjoins Mrs. Mason's
lot. On November 3, 1881, Mrs. Fellows purchased of Edward
A. Fellows his estate in remainder.

J. T. Fellows died July 17, 1878. Soon afterwards Mrs.
Mason being prevented from using the gate and way by which
she had had access to her coal shed, moved back her coal shed
and fence to the southerly side of Rock street, and took down
a portion of the fence in front along Main street and in the
rear along the alley, for the purpose of opening Rock street.
Mrs. Ferguson, then Mrs. Fellows, resisted this, and Mrs.
Mason was compelled to desist. Subsequently the councils of
the city of Scranton were petitioned by Mrs. Mason to open
Rock street, but without success. In the meantime Mrs.
Fellows had opened the alley in the rear of her premises and
extended it across Rock street, which she fenced on either
side, and across the rear of Mrs. Mason's inclosure, and having
taken possession of the land covered by Rock street, she and
her present husband began to erect a dwelling house directly
upon it. The plaintiffs, Mrs. Mason and her husband, there-
upon, on March 20, 1883, filed this bill.

Finding upon the foregoing facts that the plaintiffs had the
right to relief, and, upon the question raised by the answer as
to the jurisdiction in equity, to grant it as prayed for, discuss-
ing the cases: Wiser's App., 9 W. N. 508; Maguire's App.,
102 Pa. 120; Pillsworth v. Hopton, 6 Ves. 51; Storm v. Mann,
4 Johns. Ch. 21; Gardner v. Newburgh, 2 Johns. Ch. 165;
Whitchurch v. Hide, 2 Atk. 391; Rhea v. Forsyth, 37 Pa.
506; North Penn. Coal Co. v. Snowden, 42 Pa. 490; Wash-
burn's App., 105 Pa. 482; Lenninger v. Railroad Co., 41 Leg.
Int. 386; Tillmes v. Marsh, 67 Pa. 507; Grubb's App., 90 Pa.
234; Haines's App., 73 Pa. 169; Scheetz's App., 35 Pa. 88;
Stewart's App., 56 Pa. 413; Bitting's App., 105 Pa. 517;
Hacke's App., 101 Pa. 245; Haugh's App. 102 Pa. 42; Mc-
Caffrey's App., 105 Pa. 257; King v. McCully, 38 Pa. 76;
Commonwealth v. Railroad Co., 24 Pa. 159, the report of the
master proceeded:

If the defendants have violated the rights of the plaintiff, Mrs. Mason, she must go into a court of law and establish or vindicate her rights before she can compel them to restore her violated rights to her. If she succeeds it is not certain whether she will receive a verdict for compensatory, or for merely nominal damages; nor is it certain whether the defendants at the end of the suit at law will be solvent. In case the plaintiff should establish her right, recover and collect the damages that a jury may find for her for being deprived of the use of the street up to the time that the suit may be commenced, it would not be an effectual and adequate remedy. Why? Because the dwelling house would be upon the land, a private nuisance obstructing the street, preventing the opening of it, except at a great cost and requiring a considerable time. In the case of a public nuisance the judgment of the court includes the abatement of the nuisance, but in a private nuisance there is no judgment of abatement. Rock street not being a public street, it never having been opened and accepted by the public as such, an obstruction upon it is not a public nuisance. If the plaintiff, Mrs. Mason, has the right to it that she claims in her bill, she has an easement in the street, and a permanent obstruction upon it would be to her a private nuisance, over which a court of equity has jurisdiction, whether the injury is great or small. The only judicial forum for abating a private nuisance is a court of equity. Therefore equity has jurisdiction in this suit so far as to prevent the erection of the dwelling house upon the disputed land, and to enjoin its removal in case it should be erected, provided the plaintiff first establishes her right in a court of law.

In case the plaintiff succeeds in establishing the right that she claims in her bill, in a suit at law, unless this bill should be retained she would be compelled to resort to another suit in equity for an injunction to enjoin the opening of the street and the removal of the building therefrom in case the defendant persisted in the wrong. The master is of opinion that justice, and the interest of the parties require that the court should direct the defendant to cease operations, and should keep the rights of the litigants in statu quo until the plaintiff shall have a reasonable time to settle her disputed rights in a court of law. If she fails to establish her right, the defendants

are secured for any damage that they may sustain, by the bond which the court has, or may hereafter, require the plaintiffs to file.

The master considers that the bill, the answer and the evidence in this case, make it one of such pressing necessity as to require the retention of the bill until the disputed rights of the parties shall be settled at law. In case the plaintiff succeeds in her suit at law, the retention of the bill will save the necessity of the expense and delay that would be incident to the filing a new bill to enjoin the opening of the street and the removal of the building therefrom; inasmuch as the present bill would answer the same purpose that a new bill would, in case the plaintiff should be obliged to resort to a court of equity; and in case the defendant should at once submit to the result of the suit at law and permit the opening of the street, the court in either event will have the control of the costs and can dispose of the same on a just basis.

Therefore the master respectfully recommends, that, at present no final decree be made, but that the bill of complaint be held and retained until the plaintiffs shall have reasonable time to have the right that they claim in their bill, settled in a court of law; and that the preliminary injunction heretofore granted by the court be continued in the meantime, so far as to enjoin the defendants from erecting any permanent building or structure on the disputed land; and that the plaintiffs be ordered to commence their suit at law within thirty days from the date of such order and to speed the same with all reasonable diligence, but in case the plaintiffs do not within the time specified commence such suit and speed the same as aforesaid, then the bill to be dismissed at the cost of the plaintiffs.

To this report and recommendation of the master, returned November, 1885, various exceptions were filed by each party, and after argument thereof the court, R. W. ARCHBALD, J., on April 2, 1886, filed an opinion and decree which after citing the facts proceeded:

These facts are practically undisputed, being found from the deeds or admissions of the parties, and the uncontradicted evidence of the witnesses. A great deal of immaterial and extraneous matter has been brought into the case, which it is

our first duty to lop off and clear away, so that it may not obscure that which alone is properly involved in the suit.

For example, the title of J. T. Fellows cannot be drawn into issue. Both parties claim under him, and if there could be any question of his title under the deed to him from Joseph Fellows of July, 1869, there can be none under the contract of 1867, which is expressly recognized and confirmed in the deed to Mrs. Ferguson from W. H. Jessup, trustee. The case must not by reason of this be allowed to assume the semblance of an ejectment, and a supposititious conflict of titles, which does not and cannot under the evidence exist, thus beclouding the real issue, which is concerning the equities, if any, which arise in favor of the plaintiffs out of the undisputed facts.

Equally immaterial is the dispute as to who built Mrs. Mason's house. Indeed throwing out the reported statements of Mr. Fellows that he was building it, which seem to me inadmissible, and the testimony of the defendant, Mrs. Ferguson, as to a statement of Mrs Mason, that her father built the house for her, which I consider Mrs. Ferguson incompetent to testify to, Mr. Fellows, the common grantor, being dead, there is practically no dispute but that Mr Mason paid for the whole house except the foundation. But whether the house was a gift or not does not enter into or affect the merits of the controversy. This is not like a parol gift followed by possession taken and valuable improvements made upon which specific performance will be decreed. The right to have Rock street opened, if such right exists, does not grow out of, nor is it strengthened by the fact, that valuable improvements have been made upon the lot by the complainants, but, as we shall see, if at all, out of other things.

After all the evidence, upon these and other still more irrelevant matters which I will not stop to notice, has been put aside, it will be found that the rights involved in this suit arise out of the clearly defined facts, which I have recited above. The learned master without stopping particularly to discuss the relations of the parties growing out of these facts, has passed at once to the question of jurisdiction. I think we can best arrive at the determination of the latter by first considering what are the plaintiffs' rights in the premises, since if

they are clear, it may have an important bearing upon the question of our equitable jurisdiction.

It is a well settled principle of law, that where upon a sale of lots reference is made to a map or plot upon which they are laid down, and which calls for certain streets and alleys, this constitutes a dedication of these ways, to the use of purchasers as public ways, and the map or plan so referred to becomes a material and essential part of the conveyance, and is to have the same effect as though copied into the deed: McCall v. Davis, 56 Pa. 434; McKee v. Perchment, 69 Pa. 342; Trutt v. Spotts, 87 Pa. 341; Transue v. Sell, 105 Pa. 604; Birmingham v. Anderson, 48 Pa. 260; Parker v. Smith, 17 Mass. 413; Thomas v. Poole, 7 Gray 84. An implied covenant is thus raised in favor of the grantee, and against the grantor and his heirs that the street or way in fact exists, and that it has been dedicated to the public use. In 2 Smith's L. Cas. 218,* the principle is thus stated:

" In a case where the owner of land in a city lays out a street through it, and sells lots on each side of it, the rights of different parties concerned appear to be as follows; the public have an easement of way or right of passage " . . . . . " but besides this public privilege, the grantees of the lots are purchasers by implied covenant from the grantor of the right to have that interval of ground left open forever."

[The cases, Thomas v. Poole, 7 Gray 84; Parker v. Smith, 17 Mass. 413; Trutt v. Spotts, 87 Pa. 341; Dailey v. Beck's Execrs., Brightley 107; Transue v. Sell, 105 Pa. 609; McCall v. Davis, 56 Pa. 434; Davis v. Sabita, 63 Pa. 90; Paul v. Carver, 26 Pa. 223; Cox v. Freedley, 33 Pa. 124; Falls v. Reis, 74 Pa. 439; Bissell v. Railroad Co., 23 N. Y. 61; Robinson v. Myers, 67 Pa. 9; s. c. 74 Pa. 269; Spackman v. Steidel, 88 Pa. 458, were then discussed at length.]

We have it then well established by the combined force of these authorities, that where lots are conveyed according to a map or plan which shows projected streets and alleys, this constitutes as to any purchaser a dedication of such ways by the then owners to a public use, for a failure to open which, covenant lies, or if the ways be once opened an action on the case against any party obstructing them; and further, that where a lot is so conveyed bounded by a street or alley, thus

dedicated to public use, title passes to the grantee to the cen-tre line of such way. There is no doubt, therefore, as to the case in hand, that so far as Mr. Fellows, and his heirs are con-cerned, all these rights accrued to the complainant, Mrs. Mason, upon the delivery to her of the deed for her lot. Her rights were clear and perfect. Notwithstanding the nominal con-sideration of one dollar, she could have brought an action of ejectment for the one half of the unopened street: Falls v. Reis, supra; the same as she could have for the lot itself, though a gift, if its possession had been denied her; or upon a refusal to open Rock street as projected, covenant could have been maintained, or upon the obstruction of its use, as a way, an action on the case.

How differently with respect to this do the defendants stand? The conveyance to Mrs. Mason was put upon record and there-by affected subsequent grantees from Mr. Fellows, as effectu-ally, though a gift, as if made upon the fullest consideration: Lancaster v. Dolan, 1 R. 231. So far as it operated as a grant, it left nothing in the grantor which he could convey to another, and it is clear, by the authorities, that not only did her deed vest in Mrs. Mason, a fee in one half of Rock street, but that it also conveyed to her as parcel of the grant a right to the en-joyment of the street as a public way, with all the appurte-nances, as well of access, as of open and unobstructed space, air, light and view. That Mrs. Ferguson, when she purchased had no actual notice, is not material. She had constructive notice by the deed of Mrs. Mason upon record. The map of lots therein referred to was as effectively called to her notice as if it had been copied into the deed: McKee v. Perchment, 69 Pa. 342; Trutt v. Spotts, 87 Pa. 341; and she was thus affected by all the rights of Mrs. Mason, springing out of the convey-ance.

Nor can I see that Mrs. Mason has lost any of her rights either by non-user, surrender, or abandonment, or that there was anything in the way in which the land covered by Rock street was used by her or by Mr. Fellows, to estop her from now claiming to have it opened, as against a subsequent pur-chaser such as Mrs. Ferguson. It must not be lost sight of, that at the time of the latter's purchase, and down to the time when Mrs. Mason began to move in regard to opening the

street, she (Mrs. M.) had in her actual possession and within her fence inclosure one half of the land covered by the street adjoining, and that she was allowed the use of a way to and from her coal shed as well as the cellar of her house across the remaining portion. Such possession and use were of themselves notice to a certain extent of her rights: Krider v. Lafferty, 1 Wh. 303. Certainly there could be no extinguishment based upon them. It may be, where an easement arises by implication or estoppel, that acts done by the party claiming the easement, which tend to destroy it, will work an extinguishment. But an easement created by grant can only be extinguished by adverse user for twenty-one years: Hall v. McCaughey, 51 Pa. 43; Lindeman v. Lindsey, 69 Pa. 93; McKee v. Perchment, 69 Pa. 342; Smyles v. Hastings, 22 N. Y. 217; Wiggins v. McCleary, 49 N. Y. 348; Arnold v. Sterms, 24 Pick. 106; Washb. Easements *pp. 557, 543, 551. In Hayford v. Spokesfield, 100 Mass. 491, there was a three foot alley which had been granted as appurtenant to a certain lot. This lot was subsequently conveyed to the plaintiff and the description bounded it in part by the alley, referring to the plan in the original deed according to which the alley had been laid out. Prior to this conveyance, however, the plaintiffs' grantor had built a high board fence across the end of the alley where it abutted on the lot. No objection to this was made for some seven years, when plaintiff put a gate in the fence for the purpose of using the alley, and defendants thereupon closed and obstructed the alley against her. It was contended that plaintiff's right to the use of the alley had been extinguished by abandonment, but the court held otherwise and sustained her action.

It seems to me, therefore, that the rights set up by the complainants in their bill are, upon the undisputed facts, clear and indubitable, and that nothing has been done, or omitted by them, to estop them from now asserting these rights against the defendants.

This brings us to the question whether the complainants are entitled to the equitable relief for which they pray. The relief sought by the bill naturally divides itself into two heads: 1. The restraint of the defendants from obstructing Rock street

with the proposed permanent obstruction. 2. Their restraint from doing anything to prevent the complete opening of the street. The former is purely injunctive, while the latter is in the nature of the specific performance of the covenant to open, implied from Mrs. Mason's deed. They differ correspondingly in their nature and require separate consideration. Let us take them up in their order.

1. There is no doubt in my mind that at least to the extent recommended by the master the complainants are entitled to equitable relief. The acts of the defendants in attempting to throw a permanent obstruction across the street in question is such an injury to, and invasion of, the at least prima facie rights of the complainants, that a chancellor would even intervene and stay such acts until the latter had opportunity to establish them at law. It does not seem necessary to refer to the cases upon this point, so many of which have been cited by the learned master in his able report. They entirely sustain him to the extent to which he goes. The real question with me is whether the court should not go further, and permanently enjoin any obstruction of these rights.

There is some apparent conflict of authority as to when equity will, and when it will not, exercise jurisdiction of this character in such classes of cases as this. Thus in North Penn. Coal Co. v. Snowden, 42 Pa. 490, STRONG, J., says: "Has it ever been supposed that one claiming a right of way over the land of another can file a bill in equity complaining that the right which he claims is denied, and that enjoyment thereof is refused to him, and praying for an injunction against such denial and refusal of his enjoyment? Has any chancellor ever sustained such a bill, or considered that he had jurisdiction of such a complaint?" And yet just such a bill was sustained in Davies v. Sear, L. R. 7 Eq. 427 as well as in Hacke's Appeal, 101 Pa. 249, in the latter of which cases it is said by Mr. Justice TRUNKEY: "It has long been settled that nuisances to rights of way are one of the classes of cases in which the equitable remedy by injunction may be sought." And the right to it in certain of such cases is recognized in the elementary writers as a well settled branch of equity jurisdiction: High Inj. § 565; Washb. Easements, *575 et seq.; Story Eq. § 927.

Opinion of Court below.

I think the distinction observable among these cases is this: Equity will not undertake to establish the legal rights of parties which are in dispute. Its jurisdiction cannot be invoked for that purpose. Such rights must be determined at law. Where, however, the complainant has a prima facie right which may suffer irreparably by a threatened act of the defendant, or from other cause, a special equity is thus superinduced, which will justify a chancellor in retaining the bill until a determination of the rights in dispute can be obtained at law. Or, where the complainant's rights are clear and undoubted, either by the admissions of the defendant or the undisputed facts in the case, equity will enjoin the infringement of them, without remitting the party to the inadequate remedies which the law may afford. Upon this dividing line the cases upon examination will be found to readily and naturally fall.

In Rhea v. Forsyth, 37 Pa. 507, the right to the alley in dispute depended upon (1) an alleged use and occupation for twenty-one years; (2) a joint dedication by the several adjoining owners. Both grounds were not only denied in the answer, but rendered doubtful by the conflicting proofs. Manifestly this was therefore a case, as the court held, which could only be properly determined at law.

In King v. McCully, 38 Pa. 76, 77, it is said by THOMPSON, J.: "The right should be clear to warrant a decree to be followed by an injunction to compel the keeping open of a way by one man over the premises of another. If doubtful, this of itself would be a sufficient reason to induce a chancellor to pause, until the right be established at law. Here, however, the district court must have come to the conclusion, not that the right was doubtful, but that there was no evidence at all of its existence as claimed by the appellant. We have carefully examined the testimony and entirely concur in that conclusion."

In Tillmes v. Marsh, 67 Pa. 507, the real purpose of the bill was to establish in the plaintiff the legal title to the land over which the alley way ran between plaintiff's and defendant's properties. This was ineffectually attempted to be disguised as a proceeding to settle boundaries, but even in that shape was the mere substitute for an ejectment.

In Bunnell's Appeal, 69 Pa. 59, it was by no means clear
that there was any road at the point where defendant had put
his stone-row. A public road ran somewhere in that direction,
but it was doubtful where it had actually been located. Not
only was the right thus in doubt, but the obstruction was itself
considered by the court of such a temporary character as not
to call upon them to protect the right against it.

In Washburn's Appeal, 105 Pa. 480, the complainants sought
to restrain the defendants from using a lane which the latter
asserted the right to use across premises in the complainant's
possession. To take jurisdiction of such a case, a court of
equity would be obliged to determine whether defendants had
a legal right to the use of the lane, a question which was de-
pendent upon conflicting evidence and disputed facts. The
distinction to be observed in such cases is thus clearly stated
by Mr. Justice CLARK: "Where rights which are legal are
asserted on one side and denied on the other the remedies are
at law. They cannot be settled under equity forms: this is
undoubtedly the general rule. In actions respecting real
property therefore if there be no equitable ground of relief
involved, the rights of the parties must be determined at law;
when thus determined, or when they are admitted in the plead-
ings, or otherwise clearly appear, an equity based upon that
right, superinduced by the acts of the parties may be asserted,
and a decree for equitable relief made; thus equity is made
the means not of establishing the legal right, but of giving
adequate protection in the enjoyment of it when thus estab-
lished." And again he says: "The cases cited by the appel-
lee are not in principle inconsistent with the cases here
referred to. In none of them did the dispute involve the
ascertainment and determination between the contesting par-
ties of their rights at law; the right of the complainant in
each of the cases was either admitted or otherwise clearly and
incontestably established, and in all of them proper grounds
were assigned for equitable relief."

These cases and others to which reference might be made
recognize in all its force the distinguishing feature upon which
equity will or will not take jurisdiction. As further illustrat-
ing. it reference may also well be made to a few of those in
which jurisdiction has been actually taken. Thus in Scheetz's

Appeal, 35 Pa. 88, plaintiffs claimed the right by prescription to the uninterrupted flow of the waters of a certain creek for the use of their mills, and the further right for this purpose to enter upon the land of the defendants and clear the bed of the creek. It was held that equity would enjoin the disturbance of this right, the acts of the defendants being not only prejudicial to its enjoyment, subversive of its very existence, and damages at law for the repeated trespasses of the defendants in disturbance of it, being wholly inadequate. In view of these circumstances, the court went so far as to undertake the very determination of the right, as well as of its enforcement by injunction. This case was followed in Bitting's Appeal, 105 Pa. 517. The defendant there demurred to the bill which necessarily admitted the facts and thus confessed the rights of the complainants growing out of them. Says Mr. Justice GORDON: "There being thus no dispute over the facts of the case, or about the rights of the plaintiffs, we have for answer but the single question, whether a court of equity will interfere to prevent a wrong of this kind, or whether the remedy is to be found in a court of law? We are inclined to think that the answer to this proposition is not at all difficult."

In Davies v. Sear, L. R. 7 Eq. 427, there was an arched way leading from the street in front through the ground floor of the premises in question to a mews in the rear. Defendant having leased these premises claimed the right to obstruct this passage way. But it was held that he was affected with notice of it, as an apparent way of necessity, and would be enjoined from obstructing it.

In Hacke's Appeal, 101 Pa. 249, already referred to, complainants claimed the use of an alley in the rear of defendant's lot. By a prior agreement between the parties, defendants were allowed to close up the alley during the term of a lease under which complainants then held their premises. Subsequently complainants renewed their lease, and notified defendants to remove their obstructions to the alley. It was held that the right of the defendants to the free use of the alley was clear and not doubtful and that equity would enjoin against obstructing it. Says Mr. Justice TRUNKEY: "This right of way is founded upon contract, the grant being shown by the respective deeds under which Brown and Hacke hold

their lots.   The owner has a right to its enjoyment in the mode and form stipulated for in the deeds.   The mere fact that the appellants prevent such enjoyment is sufficient ground for interference of the court by injunction.   It is not necessary that the owner should prove damages to entitle him to his property.   Like rule applies as if the right existed by covenant directly between Brown and Hacke, and in such case when the covenant is of such a nature that it can consistently with the principles of equity be specifically enforced the court will not unless under very exceptional circumstances take into consideration the comparative injury to the parties from granting the injunction."

Under these decisions the main consideration upon the question of whether the court has jurisdiction in the present case or not, is, are the rights of the complainants clear ?   I take it they are so to be considered in every case, where there is no conflict of evidence upon any material issue, and the rights of the parties are simply to be declared as they arise out of the undisputed facts.   Such is the position, as we have seen, of this case.   In this view, the admitted acts of the defendants in obstructing Rock street are the invasion of a clear right vested in the complainants.   There is no occasion therefore to require such right to be first established at law.

But jurisdiction in equity will not be taken in every case, simply because the right is clear.   The remedies at law must also be inadequate.   The entire inadequacy of any legal remedy in the present case is, however, readily shown.   Covenant would not lie, because there is no privity, either of contract or estate.   A recovery might be had by the plaintiffs in ejectment, but only for one half of the street.   This would not give them the benefit of the other half.   Trespass or case would probably lie, but damages for each several trespass or obstruction would be no compensation to the plaintiffs for the constant invasion of their rights, nor for the denial of access, air, light, view, etc., which are the incidents of being bounded by a street.   The right therefore being clear and the remedies at law inadequate, the jurisdiction of equity is perfect.

2. So far we have been considering simply the restraint of obstructions to ways actually opened.   The relief prayed for.

in this case, however, goes further and calls for the enjoining
of the defendants from standing in the way of the opening of
the street to which plaintiffs have shown the right. This is,
as we have seen, in the nature of a specific enforcement against
the defendants of the covenant to open implied from the deed.
It has been recognized as such by counsel on both sides, and
their arguments have been directed accordingly.

I will first meet the objection raised that in this view no re-
lief will be granted because the conveyance to Mrs. Mason
was a gift. The principle is undoubted that a voluntary con-
tract will not be specifically enforced. But*this only applies so
long as it remains executory. When once it has become
executed, then anything incident to the completed gift will
be enforced against the donor, the same as if the transaction
were based upon an original valuable consideration: Dennison
v. Goehring, 7 Pa. 178, 179; Est. of Webb, 49 Cal. 541;
Stone v. Hackett, 12 Gray 231; Kekewich v. Manning, 5
DeG., M. &. G. 176. To meet this, defendant's counsel
argues that the gift to Mrs. Mason was only completed so far
as the conveyance and possession of her lot was concerned,
and that as to the street, the gift was incomplete and imper-
fect, and Mrs. Mason having accepted the gift in such shape
cannot now ask for its enlargement. On the other hand,
counsel for plaintiffs have endeavored to show that valuable
improvements have been made upon the strength of the gift
to relieve it from its voluntary character, and in opposition to
this again defendants have asserted that Mrs. Mason's house
was also a gift from her father. All this is entirely aside from
the case. When the deed from Mr. Fellows to his daughter
was delivered the gift was complete in all its extent. Nothing
was then left to be executed so as to fully vest in her the title
to that which was given. As I have already had occasion to
remark, ejectment could immediately have been maintained
by her if possession of the land had been denied, or covenant
upon the implied duty to open the street. The right to all
this at once upon delivery of the deed vested in her, as inci-
dent to and parcel of the grant, and whatever was necessary
to put her in possession of the rights with which she thus
became invested, both law and equity would do. There is
therefore no ground for refusing to enforce this covenant

because the transaction out of which it grows was originally voluntary.

Nor is there any difficulty in enforcing this covenant against the defendants, because they have no privity with the plaintiffs, but are merely grantees from Mr. Fellows. In Pomeroy Eq. Juris. § 689, it is said: "If the owner of land enters into a covenant concerning the land, concerning its use, subjecting it to easements or personal servitudes, and the like, and the land is afterwards conveyed or sold to one who has notice of the covenant, the grantee or purchaser will take the premises. bound by the covenant, and will be compelled in equity either to specifically execute it or will be restrained from violating it; and it makes no difference whatever with respect to his liability in equity whether the covenant is or is not one which in law 'runs with the land.'" Many examples are given by the learned author in a note illustrating this doctrine. In the succeeding section he shows that the notice with which the party is affected may be constructive as well as actual.

The whole subject is again brought forward in § 1295, where it is still more enlarged upon, in the text and notes. The reports are full of the same doctrine. In Scott v. Burton, 2 Ashm. 312, it is said by Judge KING: "Injunction in the nature of specific performance to restrain the violation of covenants are among the most common as well as the most valuable means employed by courts of equity to make men do what conscience ought, to lead them to perform their contracts specifically and according to the terms thereof."

In Clark v. Martin, 49 Pa. 289, where the owner of two lots conveyed one of them upon the express condition, that no building should be erected upon the back of it higher than ten feet, it was held that this condition could be enforced against a subsequent grantee, by an injunction and a decree abating the building which had been erected pending suit.

In Tuck v. Moxhay, 2 Phillips 778, it is said by the Lord Chancellor: "If an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased." It was there held, that when a purchaser of land had covenanted to keep and maintain it, at all times, as a square and pleasure ground, and the defendant had purchased of the

plaintiff's vendee with notice, an injunction would lie to restrain the defendant from using the land contrary to the terms of the covenant.

These are cases where the covenant or condition was attached to the grant, and so became a burden upon the grantee. But the same rule equally applies, when the covenant rests upon the original grantor, or those claiming under him. Thus in Mann v. Stevens, 15 Sim. 377, a person sold a lot of land to another and covenanted not to use the adjoining land except for ornamental purposes, and it was held that a subsequent purchaser who had notice of such covenant, might be enjoined from using the land in violation of it.

In Yeaton's Appeal, 105 Pa. 125, a covenant in a deed not to build within a specified distance of the line of the lot, was enforced in equity against a subsequent purchaser of the adjoining property from the common grantor.

In Huber v. Gazeley, 18 Ohio 18, a public square had been laid out, and lots adjoining purchased by the complainants according to such plot. It was held, that a bill could be sustained to establish the dedication and preserve the public use against the defendants, who claimed title to the land covered by the square, as purchasers from the original owner and who were in possession of it, and erecting buildings thereon. See further: Whitney v. Union Railway Co., 11 Gray 364; Western v. McDermott, L. R., 2 Ch. App. 72; Truehart v. Price, 2 Munf. 468. These are only examples illustrative of the principle relied upon. They do not begin to exhaust the category, but are sufficient for our purposes.

It must not be lost sight of in considering this aspect of the case, that to a modified extent Mrs. Mason was, at, and subsequent to, the date of Mrs. Ferguson's deed, up to the time of Mr. Fellows' death, enjoying a right of way over Rock street, one half of the land covered by it, being in her actual possession. From that possession she receded simply as preparatory to the opening of the street, after the right of way through the Fellows enclosure had been denied her. Thus the specific enforcement of this covenant amounts in part to a restoration.

In every light, therefore, in which the case can be reviewed, the equities of the plaintiffs appear, and it becomes our duty to declare and enforce them.

The exceptions of the defendants to the master's report are all overruled. The first eleven exceptions of the plaintiffs are overruled, but the twelfth, thirteenth, fourteenth and fifteenth exceptions are sustained, and a perpetual injunction is awarded as prayed for in the bill, the costs of suit to be paid by the defendants.

A decree was signed in accordance with this opinion. The defendants thereupon took this appeal, assigning that the court erred:

1. In ruling that the case presented upon the pleadings is one within the jurisdiction of the court sitting in equity.

2. In ruling that the court sitting in equity has jurisdiction to enforce the specific performance of a voluntary covenant.

3. In ruling that the mention of Rock street as a boundary in the deed from Joseph T. Fellows to Sarah E. Mason conveyed to her a right to the centre of the so-called Rock street.

4. In ruling that the right of way claimed by complainant could only be lost by twenty-one years adverse user.

5. In entering the decree in favor of the complainant according to the prayer of the bill.

*Mr. A. Ricketts* (with him *Mr. James E. Carmalt*), for the appellants:

1. The bills set forth plainly and simply that the plaintiff has a legal claim and the defendant a counter legal claim. The answer plainly and directly denies the claim of the plaintiff and declares that the defendant is the holder of the legal title to the property in dispute, free and clear of the claim set up by plaintiff, and denies that the plaintiff has set forth such a cause of action as is within the jurisdiction of the court sitting in equity. The plaintiff instead of setting down the case to be heard upon the question of jurisdiction, replied to the answer; thus distinctly joining issue upon the defendants' defence upon the legal title. Observe, that the question presented in the pleadings is the proper construction of the deeds to the parties, both plaintiff and defendant. No power in our government can take from a litigant the right to have tried by a jury such questions as have always been triable according to the course of law by a jury. The legislature cannot confer upon the

courts the power of trying such cases according to the course of chancery: North Penn. Coal Co. v. Snowden, 42 Pa. 488; Norris's App., 64 Pa. 275, 280; Tillmes v. Marsh, 67 Pa. 507; Haines's App., 73 Pa. 169; Grubb's App., 90 Pa. 228; Washburn's App., 105 Pa. 480; Messimer's App., 92 Pa. 168; Long's App., 92 Pa. 171; Barclay's App., 93 Pa. 50; Emerson & Wall's App., 95 Pa. 258; Enterprise Transit Co.'s App., 9 W. N. 225; Triscuit's App., 13 W. N. 57; Meck's App., 97 Pa. 313. Therefore, if the plaintiff in her bill sets forth a case not within equity jurisdiction, she conclusively states herself out of court, for she cannot legitimately state one case and prove another.

2. It is frequently overlooked that courts in Pennsylvania have only limited chancery powers; that they have never been invested with the full powers of the English Court of Chancery. Even that court does not compel the specific performance of voluntary covenants. To entitle a party to the equity of specific performance, the contract must have been made upon a valuable consideration: Story Eq. J., §§ 793, a, b, 793; 2 Spence Eq. J., 285; Adams Eq., 77*, 78*; Bisph. Eq., §§ 372, 373; Holloway v. Headington, 8 Sim. 324; Jeffreys v. Jeffreys, 1 Craig & Ph. 138; Kennedy v. Ware, 1 Pa. 445; Campbell's Est., 7 Pa. 100; Albert v. Ziegler, 29 Pa. 50; Kidder v. Kidder, 33 Pa. 268; Crawford's App., 61 Pa. 52. Cases of executed trusts have no applicability. Donatio perficitur possessione accipientis. To say that the gift of the street was complete by the delivery of the deed to the plaintiff, without valuable consideration, simply mentioning a street as a boundary where no street exists, and the donee never put into possession of the street, is a misuse of language: 2 Kent Com. 438; Withers v. Weaver, 10 Pa. 391; Trough's Est., 75 Pa. 115.

3. It was a clear mistake to hold that the mention of Rock street as a boundary, amounted to a conveyance of twenty-five feet more of the donor's land than was embraced within the courses and distances in the deed. The utmost that the plaintiff could claim was an implied covenant to open the street there and give her a right of way over the same : Robinson v. Myers, 67 Pa. 9, 18; s. c., 74 Pa. 269; Spackman v. Steidel, 88 Pa. 453; and being an implied covenant in a voluntary deed, it is not a matter to be specifically enforced in equity.

4. The ruling that such a right of way could only be lost by twenty-one years adverse use, was also error. It loses sight of the distinction between an inconsistent use by the claimant of an easement, and an adverse use by some one else against such claimant. We can admit that twenty-one years' adverse use is necessary to extinguish the claim; but it is equally true that a single year's inconsistent use by the claimant just as effectually extinguishes the claim: 3 Kent Com. 449; Robinson v. Myers, 67 Pa. 9.

If we are right in any of the foregoing particulars, then the court erred in entering the decree in favor of the plaintiff.

*Mr. Allan H. Dickson* (with him *Mr. J. H. Campbell*), for the defendant in error:

We claim jurisdiction of the court on two grounds:

1. The right of the plaintiff is certain, clear and undisputed, and the remedy at law inadequate and doubtful.     '

(*a*) Both parties claim and own their lots through J. T. Fellows. Even the last deed of the trustee to the defendant recited that it was made in pursuance of the contract of Joseph Fellows to J. T. Fellows. Therefore there can be no dispute as to J. T. Fellows' title. (*b*) Neither the answer nor the evidence denies the due execution and delivery of the deed of J. T. Fellows conveying lot No. 2, bounded by Rock street, to the plaintiff; recorded on December 2, 1871. (*c*) It is admitted that in 1878, the defendant, being the grantee of J. T. Fellows subsequent to the record of such deed, began to erect a house on the land so covenanted as Rock street. These undisputed facts establish the right. The description in the deed constitutes a covenant that the grantor will open a public highway as therein mentioned: Trutt v. Spotts, 87 Pa. 339; Transue v. Sell, 14 W. N. 397; Baxter v. Arnold, 114 Mass. 577; Toby v. Taunton, 119 Mass. 404; Bissell v. Railroad Co., 23 N. Y. 64; Cox v. Railroad Co., 48 Ind. 179; Watson v. Bioren, 1 S. & R. 228; Walker v. Gerhard, 9 Phila. 116. The right is not affected by the fact that the street has not been opened: Lehigh St., 81* Pa. 85; Pearl St., 111 Pa. 565. The unrecorded plot became as much a part of the deed as though incorporated in it: Birmingham v. Anderson, 48 Pa. 253; McKee v. Perchment, 69 Pa. 343; Eckman v. Eck-

man, 68 Pa. 470. That the plaintiff permitted her grantor to delay the fulfilment of the obligation did not deprive her of the right. Her right being created by deed, could not be extinguished by parol: Erb v. Brown, 69 Pa. 218; nor by nonuser, nor by anything short of adverse possession continuous for twenty-one years: Hall v. McCaughey, 51 Pa. 43; Lindeman v. Lindsey, 69 Pa. 99; Bombaugh v. Miller, 82 Pa. 207; Smyles v. Hastings, 22 N. Y. 217; Whitney v. Railroad Co., 11 Gray 359; Hayford v. Spokesfield, 100 Mass. 557. No judgment at law could make the right clearer; our title is by deed; no fraud or mistake has been claimed or proved; no defence has been shown; the decree was therefore right; Hacke's App., 101 Pa. 245; Yeaton's App., 105 Pa. 127; Bitting's App., 105 Pa. 517; Lenninger v. Railroad Co., 41 Leg. Int. 337; Staight v. Burn, L. R. 5 Ch. D. 163; Tulk v. Moxay, 2 Ph. (22 Eng. Ch.) 778; Mann v. Stephens, 15 Sim. (38 Eng. Ch.) 377; Coles v. Sims, 5 DeG., M. & G. 1; Whitney v. Railway Co., 11 Gray 364; Huber v. Gazely, 18 Ohio 18; Corning v. Lowere, 6 Johns. Ch. 439; Hills v. Miller, 3 Paige 254; Watertown v. Cowen, 4 Paige 510; 2 Wait Actions & Def., 682.

As to a remedy at law: Trespass would not lie: Dietrich v. Berk, 24 Pa. 470; covenant would give damages, no street: Krehe v. Burrill, L. R. 7 Ch. D. 551; and but nominal damages: St. Andrews Church's App., 67 Pa. 519; Bricker v. Grover, 10 Phila. 91; yet the injury would be of a repeated and continued character, occasioning damage estimable only by conjecture: Commonwealth v. Railroad Co., 24 Pa. 160; Hacke's App., 101 Pa. 249; Sunderland v. Whitesides, 7 Phila. 335; Sheetz's App., 35 Pa. 88.

2. The attempted erection of a house on the land covenanted for a street was a breach of the covenant of such a permanent and continuous nature as justified a decree preventive and for specific performance: St. Andrews Church's App., 67 Pa. 518; Clark v. Martin, 49 Pa. 298; Peck v. Conway, 119 Mass. 548; Hills v. Miller, 3 Paige 254; 2 Wait's Act. & Def. 682; Add. Cont., 8th ed., 1131–1133. By the covenant the plaintiff owns the fee to the centre of the street subject to the easement of the lot-holders on the plot: Berwind, White & Co. v. Barnes, 13 W. N. 541; Lehigh St., 81* Pa. 85; the breach of

which covenant the court will restrain unless good cause be shown to the contrary: Brush Electric Light Co.'s App., 114 Pa. 574. Jurisdiction being acquired, the powers of the court extend to a final settlement of the controversy: Winton's App., 97 Pa. 385; Allison's App., 77 Pa. 221; Socher's App., 14 W. N. 381; McGowin v. Remington, 12 Pa. 56.

Moreover; a voluntary conveyance is as effective in Pennsylvania against the grantor, his heirs and subsequent assigns, as though there had been a valuable consideration: Lancaster v. Dolan, 1 R. 231–46; Foster v. Walton, 5 W. 378; Dougherty v. Jack, 5 W. 456; Baltimore v. Williams, 6 Md. 235; Beal v. Warren, 2 Gray 447, 456; Waterman Spec. Perf. § 342; 4 Kent Com. § 464; Dennison v. Goehring, 7 Pa. 175; especially, as since the conveyance the plaintiff improved the property at large expense with her father's knowledge: Sower v. Weaver, 84 Pa. 262; Young v. Glendenning, 6 W. 509; Syler v. Eckhart, 1 Binn. 378.

OPINION, MR. JUSTICE PAXSON:

The principal question in this case is one of jurisdiction. The general rule is, that "where rights which are legal are asserted on one side and denied on the other the remedies are at law. They cannot be settled under equity forms. In actions respecting real property, therefore, if there be no equitable ground of relief involved, the rights of the parties must be determined at law; when thus determined, or when they are admitted in the pleadings, or otherwise clearly appear, an equity based upon that right, superinduced by the acts of the parties, may be asserted, and a decree for equitable relief made. Thus equity is made the means not of establishing the legal right, but of giving adequate protection in the enjoyment of it when thus established:" Washburn's Appeal, 105 Pa. 480. In that case the point decided was, that a court of equity had no jurisdiction to settle a disputed legal title to land, or to a right of way, on a bill in equity filed by the party in possession, averring that a multiplicity of suits at law may result to redress threatened grievances. The facts were disputed, and no clear right to the subject in dispute established, and no irreparable injury shown. The relief prayed for was therefore properly denied.

It is not so in this case. There are no material facts in dispute, and the plaintiff's right is clear. It is not denied that Joseph T. Fellows, by a deed in fee simple, conveyed to his daughter, Sarah E. Mason, one of the plaintiffs, the lot at the corner of Main and Rock streets, and that by the terms of said conveyance the lot in question is bounded by Rock street aforesaid. It is a well settled principle of law, that where upon a sale of lots reference is made to a map or plot, upon which they are laid down, and which calls for certain streets and alleys, this constitutes a dedication of these ways to the use of purchasers as public ways, and the map or plan so referred to becomes a material and essential part of the conveyance, and is to have the same effect as though copied into the deed: Birmingham v. Anderson, 48 Pa. 253; McCall v. Davis, 56 Pa. 431; McKee v. Perchment, 69 Pa. 342; Trutt v. Spotts, 87 Pa. 339; Transue v. Sell, 105 Pa. 604; Parker v. Smith, 17 Mass. 413; Thomas v. Poole, 7 Gray 84. This conveyance, therefore, gave the plaintiff the right to the use of Rock street as a public highway as against her grantor, and his heirs and assigns. That Rock street was not opened is not material.

It is also undisputed that by the subsequent deed from Fellows to his wife (now Mrs. Ferguson, and one of the defendants) it bounded the lot conveyed to the latter by the line of the lot previously conveyed to Mrs. Mason, thus including the whole of Rock street. This he had no right to do and his deed passed no title to Mrs. Fellows to that portion of the street embraced therein. Mrs. Mason's deed was on record, and the defendants had constructive notice thereof. There was nothing in the case to show that the plaintiff had either parted with her right to Rock street, or had lost said right in any way.

The position that the conveyance to Mrs. Mason was voluntary, and therefore that a court of equity will not enforce her rights under it as against the grantor and his heirs, is not tenable. This was a conveyance in consideration of one dollar from a father to his daughter, and was fully executed. Moreover, the plaintiffs had erected a house on the lot at an expenditure of several thousands of dollars. Under such circumstances it cannot be seriously questioned that a court of equity would enforce their rights. If any authority were needed for

.so plain a proposition it may be found in Lancaster v. Dolan, 1 R. 231; Foster v. Walton, 5 W. 378; Dougherty v. Jack, Idem 456; Dennison v. Goehring, 7 Pa. 175; Baltimore v. Williams, 6 Md. 235; Beal v. Warren, 2. Gray 447.

The plaintiffs have also an equity. As before stated they have erected an°expensive house upon their lot upon the faith of its bounding on Rock street. The injury threatened is of a character that would prevent a recovery in damages being an adequate remedy. Such recovery would not give plaintiffs the use of the street.

The facts being undisputed the case comes clearly within the exceptions pointed out in Washburn's Appeal, supra, and we are of opinion that the learned judge below was right in entering a decree in favor of the plaintiffs.

> Decree affirmed and appeal dismissed. at the costs of the appellants.